UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MAE SMITH, as Personal Representative of the Estate of Carl Ashley, Deceased, for and on behalf of the survivors of the Estate of Carl Ashley, CARL ASHLEY, minor surviving child of Carl Ashley, THE ESTATE OF CARL ASHLEY,**

**Plaintiffs,**

**-vs-** **Case No. 6:06-cv-715-Orl-31JGG**

**BREVARD COUNTY, FLORIDA, BREVARD COUNTY SHERIFF, OFFICER REGINA ELLIS, PRISON HEALTH SERVICES, CIRCLES OF CARE, INC., AMY DIAMOND, JOHN DOE II, JOHN DOE III, and OFFICER ZIMMERMAN,**

**Defendants.**

---

# ORDER

The Plaintiffs sued the Defendants alleging violations of both Florida state and Federal law for the events surrounding the death of Carl Ashley ("Ashley") during his incarceration. (Doc. 32). This matter is presently before the Court on Motions to Dismiss filed by Brevard County Sheriff Jack Parker ("Parker"), Officer Regina Ellis ("Ellis"), Officer Zimmerman ("Zimmerman") (Doc. 35), Brevard County (the "County") (Doc. 39), Prison Health Services ("PHS") and John Doe II (Doc. 40), and Circles of Care ("Circles"), Amy Diamond ("Diamond") and John Doe III (Doc. 41), and the Plaintiffs' Responses thereto (Docs. 48, 45, 47 and 46, respectively).

## I. Background

A. Parties

Mae Smith ("Smith"), is the personal representative of Ashley's estate. She has filed this suit on behalf of Ashley's estate, Phillip Salley, a minor surviving child of Ashley, and Barbara Ashley, Ashley's parent.

The County is a political subdivision of the State of Florida. The County is responsible for funding the Brevard County Detention Center ("BCDC") and for providing medical care to inmates incarcerated there. Parker was the Sheriff of Brevard County. His responsibilities included running BCDC. PHS is a Delaware corporation conducting business in Brevard County pursuant to a contractual relationship with the County and/or Parker and/or the BCDC to provide medical care for the inmates at BCDC. Circles is a Florida non-profit corporation with its principal place of business in Brevard County, operating pursuant to a contractual relationship with the County and/or Parker. Amy Diamond ("Diamond") is a licensed psychiatrist working for Circles.

B. Facts

Ashley was incarcerated at BCDC on December 5, 2003. On December 29, 2003, he told Nichole Ashley that he wanted to commit suicide, and manifested an intent to seriously injure or kill himself.[1] Nichole Ashley called BCDC and told the receptionist that Ashley was suicidal. Ashley was then placed on suicide watch from December 29 through December 31, 2003. Ashley was taken off of suicide watch on December 31, 2003, and returned to BCDC's general

---

[1] Ashley's relationship with Nichole Ashley is not alleged.

population.  Diamond, a licensed psychiatrist, gave the approval for Ashley to return to the general

population.

    On January 13, 2004, Ashley was sleeping on the day room floor of Unit C of the 400 pod.

He was sleeping on the floor due to jail overcrowding.[2]  The door to cell #440 had been left open

so that inmates could use the restroom.  Ashley entered cell #440 and hung himself.  Ellis was

monitoring the pod at that time, but was not aware of Ashley's actions; instead, another inmate

found Ashley.[3]  Officers at BCDC attempted to revive him with oxygen tanks and a defibrillator,

but both oxygen tanks brought to the scene were inoperable and the defibrillator was not working

properly.  Ashley subsequently died.

---

    [2] The Plaintiffs allege that the number of inpatient beds was not sufficient to provide
psychiatric treatment to the inmates who required such treatment, and that BCDC lacked sufficient
space to accommodate the number of inmates with mental illnesses.  More specifically, the Plaintiffs
allege that inmates that are identified as suicidal are housed in areas that are confined and
overcrowded, without a mattress, for extended periods of time.  The Plaintiffs assert that the
Defendants had a policy, custom or practice of keeping suicidal inmates in these conditions.  In
addition to allegations of overcrowding, the Plaintiffs allege that the Defendants failed to provide
adequate mental health services and imposed punishments that aggravated the inmates' mental
illnesses.  The Plaintiffs assert that this failure to provide treatment caused the mentally disabled
inmates to "psychiatrically deteriorate and to engage in behavior symptomatic of their illnesses."

    [3] Both Ellis and Zimmerman had been charged with monitoring the activity in pod 400 on
January 13, 2004.  The Plaintiffs allege, however, that Ellis and Zimmerman failed to properly monitor
Ashley despite the strong likelihood that he would harm himself.

C. Claims and Arguments[4]

*1) 42 U.S.C. section 1983 - Counts I-IV (Parker), VI (the County), VIII (PHS), X (Circles), and XII (Zimmerman and Ellis)*

The Plaintiffs allege that, in violation of the Fourth and Fourteenth Amendments, these

Defendants, *inter alia*: (1) failed to properly train the administration, officers and deputies at

BCDC to identify suicidal inmates and to take appropriate action to prevent inmates from

committing suicide; (2) failed to provide an adequate number of competent mental health

professionals and staff at BCDC; (3) failed to provide safe housing to inmates that had been

identified as suicidal, and failed to remedy ultra-hazardous conditions that inmates could use to

commit suicide; (4) failed to remedy the overcrowded conditions at BCDC; (5) created a situation

where corrections officers failed to notify the medical staff and failed to seek treatment for

inmates; (6) were aware that inmates received inadequate medical care; (7) discouraged the

transfer of inmates in need of medical attention to the hospital in order to save money; (8) failed to

properly identify and diagnose inmates with mental health problems, and failed to provide

adequate medical and mental health care to inmates; and (9) failed to properly house and monitor

Ashley, and failed to detect and prevent his suicide.  The Plaintiffs further allege that these failures

resulted in injuries that caused Ashley's death.  All of these allegations are made in the context of

---

[4] At the outset, the Court notes that the Amended Complaint was, at best, sloppy and difficult to follow.  There are multiple instances where the same allegation is repeated within the same count. The allegations in many of the counts do not proceed in any sort of logical or narrative flow.  Clearly many of the counts were prepared simply by cutting and pasting the language of earlier counts, with little or no effort made to mold the language to the particular defendant at issue.  The Complaint is also overflowing with allegations that are either entirely irrelevant or, if they are relevant, are not tied in any way to the claims made.  Finally, "John Does" and named individuals/defendants (who could, presumably, be the same people), appear seemingly interchangeably, popping up and then disappearing like frightened prairie dogs.

a "custom, policy, or practice," and the Plaintiffs allege that each Defendants' actions or failures to act constitute deliberate indifference and willful and intentional conduct.

These Defendants have moved to dismiss these claims, arguing, *inter alia*, that: (1) the Plaintiffs failed to state a claim of deliberate indifference under Section 1983; (2) the Plaintiffs failed to state a claim of municipal liability; and (3) the Fourth Amendment claims are not viable under the facts of this case.  Parker, Zimmerman and Ellis also argue that they are entitled to qualified immunity.

*2) Wrongful death - Counts V (Parker), VII (the County), XIII (Ellis, Zimmerman and Pellasce)*

The Plaintiffs allege that these Defendants had duties to, *inter alia*, provide medical care to Ashley during his incarceration, monitor him, prevent him from committing suicide, and provide a jail that was not overcrowded, but that the Defendants breached these duties by failing to provide Ashley with adequate mental health treatment, keeping Ashley in the general population instead of on suicide watch, using non-functioning medical equipment to try to revive Ashley, and acting deliberately indifferent to Ashley's needs.  The Plaintiffs also describe these Defendants' actions or failures to act as negligent, recklessly indifferent, deliberately indifferent, willful and intentional.

These Defendants have moved to dismiss these claims, arguing that the Plaintiffs have failed to state a claim for wrongful death.  The County argues that it is protected by sovereign immunity from this claim because decisions concerning prison funding and improvements are protected decisions, and the underlying employee actions for which the Plaintiffs seek to hold the County vicariously liable are acts for which the County may not be held liable.

*3) "Reckless indifference" - Counts IX and XI (PHS and Circles, respectively)*

The Plaintiffs label these claims "state law tort claim for reckless indifference," and allege that PHS and Circles failed to provide adequate medical and mental health care to inmates at BCDC, and failed to properly identify and diagnose those inmates with mental health problems, and that these failures caused Ashley's death.  The Plaintiffs further allege that PHS' and Circles' conduct was deliberately indifferent, willful and intentional.

PHS and Circles assert that these claims should be dismissed because the Plaintiffs failed to demonstrate that they performed the statutory conditions precedent to filing a claim for medical malpractice.

*4) 42 U.S.C. section 1985 - Count XIV (the County, Parker, Ellis, Zimmerman,
PHS, Circles, Diamond, John Does II and III)*

In Count XIV, brought against the County, Parker, Ellis, Zimmerman, PHS, Circles, Diamond, and John Does II and III, the Plaintiffs allege that, in violation of 42 U.S.C. section 1985 ("Section 1985") these Defendants conspired to violate Ashley's Fourteenth Amendment rights, and, acting in concert, failed to provide adequate housing, testing, monitoring, training, mental health professionals, medication, failed to remedy known dangers at the BCDC, and failed to properly care for suicidal inmates at BCDC.  The Plaintiffs further allege that these Defendants had a policy, custom or practice of failing to provide proper and safe housing to those inmates that had been identified as suicidal, which failure led to Ashley's death.

The Defendants have moved to dismiss Count XIV, arguing that the Plaintiffs have failed to state a claim for a violation of Section 1985, Ashley was not a member of a Section 1985 class, and Count XIV impermissibly commingles allegations against all of the Defendants in a single count.

## II. Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it

rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

**III. Legal Analysis - Section 1983 and Inmate Suicide**

A. The Law to be Applied

To prevail in a Section 1983 claim for a violation of substantive rights under the Fourteenth Amendment, "the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life."[5] *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (internal citations and quotations omitted).[6] To establish deliberate indifference, the plaintiff must show that the defendant had "(1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." *Id*. (internal citations, quotations and punctuation omitted).[7] In the Eleventh Circuit,

---

[5] The showing of deliberate indifference is a difficult burden for a plaintiff to meet. *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990).

[6] Jail suicides have been held to be analogous to the failure to provide medical care, and thus deliberate indifference is the barometer by which suicide cases, involving both convicted prisoners and pretrial detainees, are tested. *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990). As the Eleventh Circuit has stated in the context of a jail suicide case,

> [w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial because in a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official [defendant] displayed deliberate indifference to the prisoner's taking of his own life.

*Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (internal citation and quotations omitted).

[7] *See also Purcell v. Toombs County, GA*, 400 F.3d 1313, 1319-20 (11th Cir. 2005) ("To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

> in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur. The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.

*Id*. (internal citations and quotations omitted) (emphasis in original); *see also Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990) (standard requires a strong likelihood; negligence will not suffice).[8] Further, the defendant "must have had notice of the suicidal tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual." *Cook*, 402 F.3d at 1117 (internal citation and quotation omitted) (emphasis in original); *see also Holland v. City of Atmore*, 168 F. Supp. 2d 1303, 1310 (S.D. Ala. 2001) ("This 'strong likelihood' must be based on facts concerning the deceased, not experience with other detainees in the facility or studies of detainees generally.").[9] Thus, absent knowledge of the particular inmate's suicidal tendencies, the "failure to prevent suicide has never been held to constitute deliberate indifference." *Cook*, 402 F.3d at 1117 (internal citation and quotation omitted); *see also Popham*, 908 F.2d at 1564.

In jail suicide cases, "an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known

---

substantial risk of serious harm exists, and he must also draw the inference.") (internal citation and quotation omitted).

[8] Indeed, not even gross negligence will suffice when judging this type of Due Process claim. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

[9] "Deliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it is a question of whether a defendant was deliberately indifferent to *an individual's* mental condition and the likely consequences of that condition." *Cook*, 402 F.3d at 1117 (internal citation and quotation omitted) (emphasis in original).

as to an inmate's suicidal tendencies." *Popham*, 908 F.2d at 1564.  In other words, "[s]ome form of knowledge of the danger is required to support a section 1983 action." *Id*.

      B. Parker[10] - Counts I through IV; the County - Count VI; PHS - Count VIII;
      Circles - Count X; Zimmerman and Ellis - Count XII

      The claims against these Defendants allege that they failed to: provide adequate staff and train that staff; provide adequate mental health professionals; properly monitor potentially suicidal inmates; provide safe housing for suicidal inmates; provide adequate medical care and mental health care; and prevent Ashley's suicide.  The Plaintiffs allege that all of these failures led to Ashley's suicide.  All of these allegations are made in the context of a policy, custom or practice.

      The Plaintiffs' claims of deliberate indifference against these Defendants are facially deficient because at no time do the Plaintiffs allege that any of these Defendants had knowledge that Ashley was at-risk to commit suicide.[11]  Even if the Court were to presume that the knowledge of various BCDC, PHS and Circles "employees" should be imputed to Parker, the County, PHS or

---

    [10] In yet another example of deficient pleading, the Plaintiffs fail to allege whether Counts I through IV are brought against Parker in his individual or official capacity.  Should these claims be brought against Parker in his official capacity, they are duplicative of Count VI brought against the County, and thus are dismissed.  *Cook*, 402 F.3d at 1115 ("When, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents - in this case, [the] County."); *Snow*, 420 F.3d at 1270 ("suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent").  Nevertheless, in an abundance of caution, the Court will address these claims as brought against Parker in his individual capacity.

    [11] Although the Plaintiffs spread their allegations against Parker out among four separate counts, the deliberate indifference analysis applies to each of them.  *See Popham*, 908 F.2d at 1563 (applying deliberate indifference analysis to claims that decedent had a right to be protected from committing suicide, was not properly monitored, and jail officials were not properly trained to identify prisoners who might commit suicide); *Edwards*, 867 F.2d at 1273 (applying deliberate indifferent analysis to claims that defendants violated state law regulating housing of inmates, failed to take suitable anti-suicide precautions, and failed to adequately staff jail).

Circles (which the Court is disinclined to do inasmuch as the Plaintiffs have made no such allegations, nor have they defined the relationship of such employees to those Defendants), there are no allegations demonstrating that those Defendants had subjective knowledge that there was a strong likelihood (rather than a mere possibility) that Ashley would commit suicide.  The allegations themselves belie any argument the Plaintiffs could make in this regard, because Ashley was placed on suicide watch immediately after his suicidal ideation was reported to BCDC personnel, kept on suicide watch for several days, and then returned to the general population with the approval of a licensed psychiatrist, and there is not a single allegation that after Ashley was returned to the general population, there was a strong likelihood that he would inflict harm upon himself, much less that these Defendants had any knowledge thereof.[12]  Counts I through IV, VI, VIII, X and XII are woefully deficient and will be dismissed.[13]

---

[12] The Court notes here that these Counts are deficient in a number of other ways.  For example, each Count relies on the existence of a policy, custom or practice.  To hold a municipality liable under such a theory, however, "there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Snow*, 420 F.3d at 1271.  The Plaintiffs allege the existence of a policy, custom or practice in a conclusory fashion, and make no effort to attribute Ashley's suicide directly to their existence.  In addition, the causal connection between any of the Defendants' alleged acts or failures to act and Ashley's suicide is tenuous to the point of non-existence.  Instead of presenting even minimal details as to how each Defendant's alleged failures contributed directly to Ashley's suicide, the Plaintiffs simply content themselves with alleging that each Defendant failed in a certain respect, and then simply seek to jump the gulf over to causation, without bothering to ensure that the two are connected in any way.  Although Federal Rule of Civil Procedure 8 provides a generous pleading standard, it still requires a short and plain statement showing how the pleader is entitled to relief; it does not call upon the courts to fill in the blanks that overwhelm the pleadings in which they are contained.  Finally, these counts (and the Amended Complaint in general) contain multiple references to the Fourth Amendment, which protects people from unreasonable searches and seizures, and thus has no bearing on this case.  To the extent any of the Plaintiffs' claims assert a violation of the Fourth Amendment, they are dismissed.

[13] In addition, the Court concludes that Parker, Zimmerman and Ellis are entitled to qualified immunity because the Plaintiffs have failed to meet the burden required of them in the qualified

**IV. Legal Analysis - Wrongful Death (Count V - Parker; Count VII - The County; Count XIII - Ellis, Zimmerman and Pellasce)**[14]

A. The County (Count VII)

The County argues that it is entitled to statutory immunity. Florida Statute section 768.28(9) provides, in relevant part,

> [t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in

---

immunity analysis. First, the Plaintiffs have utterly failed to establish a Constitutional violation. Moreover, in their Responses, the Plaintiffs failed to cite even a single case demonstrating that the law was clearly established that what the Defendants allegedly did (or failed to do) constituted such a violation. The Defendants properly stated their case for qualified immunity, at which point it was the Plaintiffs' burden to overcome that showing. *Belcher*, 30 F.3d at 1395. To satisfy that burden,

> the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry . . . showing that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances. If no such case law exists, then the defendant is entitled to qualified immunity.

*Id*. (internal citations and quotation omitted); *see also Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir. 1995) ("Should the plaintiff fail to show that the law was clearly established at the time in question, the individual defendant is entitled to qualified immunity."). In this case, however, the Plaintiffs have done exactly the opposite of what they are required to do to defeat qualified immunity. Instead of conducting a fact-specific analysis of both this case and analogous case law, the Plaintiffs rely entirely on a restatement of their allegations and cite to cases only for broad propositions of law. In fact, the portion of the Plaintiffs' Response clearly dedicated to the qualified immunity issue is entirely devoid of legal analysis. (*See* Doc. 48 at 5-6). Accordingly, Parker, Zimmerman and Ellis are entitled to qualified immunity on the Section 1983 claims against them (Counts I through IV and XII).

[14] "Defendant Pellasce" is not a named defendant in this case and is never identified anywhere else in the Amended Complaint. It is unclear whether service was ever perfected on Pellasce. Accordingly, any claims brought against Pellasce are dismissed.

a manner exhibiting wanton and willful disregard of human rights, safety, or property. F.S. § 768.28(9). The phrase "wanton and willful" "connotes conduct much more reprehensible and unacceptable than mere intentional conduct," *Maybin v. Thompson*, 514 So. 2d 1129, 1131 (Fla. 2d DCA 1987) (internal citation omitted), and has been equated with reckless conduct. *Samedi v. Miami-Dade County*, 134 F. Supp. 2d 1320, 1354 (S.D. Fla. 2001); *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993). The Plaintiffs repeatedly allege that the Defendants in this case were deliberately indifferent,[15] a characterization which certainly falls within the definition of "reckless" or "willful and wanton." *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."). Therefore, the County is protected by sovereign immunity from the claim in Count VII, and Count VII will be dismissed.

B. Parker, Ellis and Zimmerman

Parker argues that the Plaintiffs have failed to state a claim for wrongful death because any duty he may have had did not extend to preventing a suicide that was not reasonably foreseeable. Ellis and Zimmerman argue that the Plaintiffs have offered nothing other than conclusory allegations regarding their alleged willful and intentional conduct, and thus have failed to provide sufficient allegations to support their wrongful death claim. These arguments have merit, and the

[15] The Plaintiffs allege that the County is vicariously liable for the acts of its employees, agents, and servants, including the correction officers employed at BCDC and the medical staff at BCDC, including PHS and its employees. (Doc. 32 at 22).

Plaintiffs have wholly failed to respond to them in their Response. Accordingly, Count V against Parker, and Count XIII against Zimmerman and Ellis will be dismissed.

**V. Legal Analysis - Reckless Indifference (Count IX - PHS; Count XI - Circles)**

PHS and Circles argue that these claims should be dismissed because the Plaintiffs have failed to comply with the pre-suit requirements of Florida Statute chapter 766, particularly the pre-suit notice requirements of section 766.106(2),[16] as well as the corroborating affidavit requirement of section 766.203(2).[17] Chapter 766 sets out certain pre-suit notice and screening requirements, which "must be met in order to maintain a medical malpractice or medical negligence action

---

[16] Section 766.106(2) provides, in relevant part:

> After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence.

F.S. § 766.106(2).

[17] Section 766.203(2) provides, in relevant part:

> Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
>
> > (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
> >
> > (b) Such negligence resulted in injury to the claimant.
>
> Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert . . . at the time the notice of intent to initiate litigation is mailed . . . .

F.S. § 766.203(2).

against a health care provider." *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, (Fla. 1994). The Plaintiffs argue that they are not subject to the requirements of chapter 766 because they have brought a claim of "common law reckless indifference," which differs from medical malpractice in that the Plaintiffs are relying on a different standard of care than that set out in chapter 766.

"It is up to the court to decide from the allegations in the complaint whether the claim arises out of the rendering of, or the failure to render, medical care or services." *Foshee v. Health Mgmt. Assocs.*, 675 So. 2d 957, 959 (Fla. 5th DCA 1996) (internal citation and quotation omitted). This inquiry is "fundamentally fact-dependent," and an "inquiry to determine the applicability of the pre-suit process should begin with the statutory definition of a claim for medical negligence." *Blom v. Adventist Health Sys./Sunbelt, Inc.*, 911 So. 2d 211, 213-14 (Fla. 5th DCA 2005) (internal citation and quotation omitted). Section 766.106 defines a claim for medical negligence or medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or services." F.S. § 766.106(1)(a). According to Florida Statute section 766.202,[18] "medical negligence" means "medical malpractice, whether grounded in tort or in contract." F.S. § 766.202(7). Reading sections 766.106 and 766.202 together, the Florida Supreme Court has determined that "chapter 766's notice and presuit screening requirements apply to claims that arise out of the rendering of, or the failure to render, medical care or services." *J.B.*, 635 So. 2d at 949. Thus, the pre-suit requirements of chapter 766 must be met when a plaintiff suffers an injury "during the course of treatment for the patient's health." *Puentes v. Tenet Hialeah Healthsystem*,

---

[18] The definitions in section 766.202 apply to Florida Statute sections 766.201 through 766.212. F.S. § 766.202.

843 So. 2d 356, 357 (Fla. 3rd DCA 2003).  Not every wrongful act by a healthcare provider is

considered malpractice; instead, the "alleged wrongful act must be directly related to the improper

application of medical services to the patient and the use of professional judgment or skill."

*Mobley v. Gilbert E. Hirschberg, P.A.*, 915 So. 2d 217, 219 (Fla. 4th DCA 2005) (internal citation

and quotation omitted); *see also Solomon v. Well Care HMO, Inc.*, 822 So. 2d 543, 545 (Fla. 4th

DCA 2002) ("A complaint does not state a medical malpractice claim for chapter 766 purposes,

where the complaint does not allege that the defendant was negligent in the rendering, or the

failure to render, medical care or services."); *Champion v. Cox*, 689 So. 2d 365, 366 (Fla. 1st DCA

1997) ("[T]he presuit screening process applies only to claims arising out of the conduct of a

health care provider in rendering or failing to render medical care or services.").[19]

  Courts have repeatedly indicated that the application of chapter 766 is not limited to only

those actions defined as "negligence."  *Paulk v. Nat'l Med. Enters., Inc.*, 679 So. 2d 1289, 1290

n.3 (Fla. 4th DCA 1996) ("Even though chapter 766 uses the term 'negligence' or 'medical

negligence' in several of its provisions, we do not believe that the legislature intended to limit

coverage of the statutory scheme to only those actions framed in terms of negligence.  It seems to

us that the intent expressed in the text is to extend the statute whenever the medical judgment of

---

[19] Thus, for example, the pre-suit screening requirements do not apply to claims for, *inter alia*, premises liability, *see Palm Springs Gen. Hosp., Inc. v. Perez*, 661 So. 2d 1222, 1223 (Fla. 3rd DCA 1995) (plaintiff sued hospital for placing plaintiff in room with another patient who committed homosexual attack on plaintiff); *Hicks v. Baptist Hosp., Inc.*, 676 So. 2d 1019 (Fla. 1st DCA 1996), false imprisonment, *see Foshee*, 675 So. 2d at 960; *Robbins v. Orlando, H.M.A., Inc.*, 683 So. 2d 664, (Fla. 5th DCA 1996) (plaintiff sued for, *inter alia*, false imprisonment, breach of contract, fraud, IIED and conspiracy where she was admitted to facility and not permitted to leave), simple negligence, *see Mobley*, 915 So. 2d at 218-19 (plaintiff claimed she was "negligently banged in the face with a piece of equipment;" such claim was independent of standard of care imposed on health care provider); *Tenet St. Mary's Inc. v. Serratore*, 869 So. 2d 729, (Fla. 4th DCA 2004).

the provider is being challenged."); *Tunner v. Foss*, 655 So. 2d 1151, 1152 (Fla. 5th DCA 1995) (claim that as a result of intentional, willful and fraudulent deception, the plaintiff did not receive adequate medical care fell within the umbrella of medical malpractice statute; plaintiff alleged that defendant intentionally deprived him of medical care and breached a fiduciary duty owed to plaintiff, which were intentional tort and contract claims, and medical negligence includes claims for medical malpractice whether grounded in tort or contract).

The Plaintiffs have alleged that

- "Defendants in this cause have continually and persistently ignored the serious mental health care needs of Ashley while he was incarcerated at the [BCDC]." (Doc. 32 at 6);

- "Defendant, PHS . . . has failed to provide adequate mental health care, and or medical care to inmates at the [BCDC] . . . thereby causing the death of Ashley. . . . Specifically, Defendant, PHS, has failed to properly diagnose and identify those individuals with mental health problems." (*Id*. at 25);

- "Defendant, Circles . . . has failed to provide adequate mental health care, and or medical care to inmates at the [BCDC] . . . . Specifically, Defendant, [Circles],[20] has failed to properly diagnose and identify those individuals with mental health problems." (*Id*. at 27-28).

These allegations bring the Plaintiffs' claims of "reckless indifference" squarely within the realm of actions related to the rendering of, or failure to render, medical care. *See Blom*, 911 So. 2d at 214-15 (allegations arose out of rendition of medical care where plaintiff alleged that physician was wrong in diagnosis where he improperly committed her for mental health issues based on medical diagnosis); *Paulk*, 679 So. 2d at 1290-91 (cause of action sounded in medical malpractice where plaintiffs alleged that decedent was in need of psychiatric treatment, the providers failed to provide decedent with meaningful treatment, and that treatment provided was without proper

---

[20] The Amended Complaint actually reads, "Specifically, Defendant, PHS," but the Court presumes that the Plaintiffs intended the reference to PHS to actually mean Circles.

regard for decedent's medical needs); *Tunner*, 655 So. 2d at 1152 (claim for refusal to render, or intentional deprivation of, medical care was claim for medical malpractice).

The Plaintiffs have cited no law for the proposition that they may arbitrarily choose to elevate the standard of care for particular causes of action, and thereby relieve themselves of the responsibility to abide by statutory pre-suit requirements. Rather than supporting a necessary element of a malpractice claim, their allegations of reckless indifference instead appear to support their claims for punitive damages. *See Curry v. Cape Canaveral Hosp.*, 426 So. 2d 64, 65 (Fla. 5th DCA 1983) (punitive damages claim required showing of malice, gross negligence, or fraud).[21]

Because this is a medical malpractice action, the Plaintiffs were required to follow the pre-suit requirements of chapter 766. *See J.B.*, 635 So. 2d at 948. Because they have failed to do so, their Amended Complaint is subject to dismissal. *Solomon*, 822 So. 2d at 545. Plaintiffs are entitled to cure this type of defect provided that the two-year limitation period has not run. *Solomon*, 822 So. 2d at 545; *Southern Neurosurgical Assocs., P.A. v. Fine*, 591 So. 2d 252, 255

---

[21] *See also* Florida Statute section 768.72, which provides, in relevant part:

> A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
> > (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
> >
> > (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

F.S. § 768.72(2).

(Fla. 4th DCA 1991). However, in this case, more than two years has passed since the accrual of this cause of action, and thus Counts IX and XI are subject to dismissal with prejudice for failure to comply with the statutory pre-suit requirements for medical malpractice claims. *Clark v. Sarasota County Public Hosp. Bd.*, 65 F. Supp. 2d 1308, 1312 (M.D. Fla. 1998).

**VI. Legal Analysis - Section 1985[22] (Count XIV)**

The elements of a cause of action under Section 1985(3) are:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

---

[22] Section 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

*Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996); *see also Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 793-94 (11th Cir. 1992).  The second element in that list "requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Childree*, 92 F.3d at 1147; *see also Burrell*, 970 F.2d at 793-94 (plaintiff "must allege a class-based, invidiously discriminatory purpose behind the defendants' action," and public officials "will not be subject to liability under section 1985(3) unless their actions were motivated by some racial, or perhaps otherwise class-based invidiously discriminatory animus.") (internal citation and quotation omitted); *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 n.11 (11th Cir. 1998) (claim that does "not allege that the defendants' actions stemmed from racial or class-based animus . . . can not satisfy the essential elements of a § 1985 conspiracy action").[23]

The Eleventh Circuit has recognized that two types of classes are protected by Section 1985(3):

> (1) classes having common characteristics of an inherent nature - - i.e., those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act.

*Childree*, 92 F.3d at 1147.  Moreover, the Eleventh Circuit has specifically recognized that prisoners are "neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3)."  *Farese v. Scherer*, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003).  At least one other court within the Eleventh Circuit has declined

---

[23] "Concerns that § 1985 might be interpreted into a general federal tort law led to the requirement that the conspiracy be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (internal citation and quotation omitted).

to recognize a class of "suicidal detainees" as a class within the protection of Section 1985(3). *See Holland v. City of Atmore*, 168 F. Supp. 2d 1303, 1316 n.16 (S.D. Ala. 2001).[24]

The Plaintiffs' allegations in support of the Section 1985 claim are little more than a mish-mash of the language of previous allegations, with the words "act together," "conspired," "acting in concert" each appearing once. These are, at best, wholly conclusory allegations, with no factual support. That alone justifies dismissal of this count as to all Defendants. *See Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). Perhaps more importantly, however, the Plaintiffs have abjectly failed to establish (or even to allege in conclusory fashion) that the alleged conspiracy was motivated by an invidious discriminatory intent toward a protected class of which Ashley was a member. Prisoners, including suicidal prisoners, are not protected as a class under Section 1985(3). Count XIV will be dismissed.

---

[24] Incredibly, the Plaintiffs dismiss virtually *all* of the legal requirements for bringing a Section 1985(3) claim, arguing that

> Plaintiff does not agree with Defendants (sic) assertion that Ashley must be in a protected class of individuals. Plaintiff has alleged as required by 42 USC § 1985 that the Defendants conspired to deprive Ashley, and other Plaintiffs and inmates of their federally protected civil rights. This is consistent with case law going back all the way to 1962. To prove a prima facie case of civil conspiracy under § 1985(3) the plaintiff must show an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights. Here, Plaintiff has properly pled the required elements under 42 USC § 1985 . . . .

(Doc. 48 at 7) (internal citations and quotations omitted). In support of this argument, the Plaintiffs rely on two cases that have virtually nothing to do with the instant case. Even a cursory review of the applicable case law would instantly reveal the deficiencies in the Plaintiffs' argument. This sort of advocacy can only be the result of either gross neglect or wanton misrepresentations. Either way, the parties are hereby reminded that the limits placed on advocacy by Federal Rule of Civil Procedure 11 and 18 U.S.C. section 1927 are real, as are the consequences for stepping over those limits.

## VII. Conclusion

For the reasons stated herein, it is

**ORDERED THAT** the Defendants' Motions to Dismiss (Docs. 35, 39, 40 and 41) are GRANTED. The Plaintiffs' Amended Complaint (Doc. 32) is DISMISSED in its entirety. Counts I through IV, IX, XI, XII, and XIV are dismissed with prejudice. The Plaintiffs shall have twenty days from the date of this Order to file an amended complaint for the remaining claims.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August14, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party