# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MAE SMITH, et al.,**

**Plaintiff,**

-vs-                                                          Case No.  6:06-cv-715-Orl-31JGG

**BREVARD COUNTY et al.,**

**Defendants.**

_____

# ORDER

This case arises out of the events surrounding the death of Carl Ashley ("Ashley").  This matter comes before the Court on Motions to Dismiss filed by Circles of Care, Inc., and Amy Diamond[1] (referred to collectively as "Circles") (Doc. 64) and Sheriff Jack Parker ("Sheriff Parker"), Officer Regina Ellis ("Ellis"), and Officer Zimmerman ("Zimmerman") (Doc. 63) and Plaintiff's Responses thereto (Docs. 77 & 76).

---

[1]The Parties refer to Circles of Care, Inc. and Amy Diamond as if they are one in the same, without ever defining their relationship.  Therefore, for purposes of this Order, the Court will assume that Amy Diamond is the final decision maker for Circles of Care, Inc. and refer to the two parties collectively.

**I. Background**

*A. The Parties*

The Plaintiff, Mae Smith, is the personal representative of the estate of Ashley.  She brings

this action on behalf of the survivors of the estate, including, Phillip Salley, a minor surviving

child of Ashley, Barbara Ashley, surviving parent, and the estate of Carl Ashley, deceased.

Sheriff Parker, at all times material to this action, was the Sheriff of Brevard County ("the

County") and was responsible for running the Brevard County Detention Center ("BCDC") and

providing medical care to the inmates there.  Sheriff Parker is being sued in his official capacity.

Defendants Ellis and Zimmerman, at all times material to this action, were employed by the

Brevard County Sheriff's Office and were working at BCDC.

Circles is a Florida non-profit corporation and at all times material to this action was under

contract to provide mental health services to the inmates at BCDC.

*B. Facts*

Ashley was incarcerated at BCDC on December 5, 2003. (Doc. 62 at 5).  During his

incarceration, Ashley expressed to several family members and friends that he wanted to commit

suicide. (Doc. 62 at 5).  Between December 5, 2003, and Ashley's death on January 13, 2004,

several family members and friends both called and went to BCDC in person to inform staff

members at BCDC that Ashley was suicidal. (Doc. 62 at 5).

On or about January 13, 2004, due to jail overcrowding, Ashley was sleeping on the day

room floor and the door to a cell was left open so that the inmates could use the restroom. (Doc. 62

at 6).  On this date, Ashley hung himself in that open cell. (Doc. 62 at 6).  Officers at BCDC

attempted to revive Ashley, however, the two oxygen tanks and the defibrillator brought to the scene were inoperable and their efforts were unsuccessful. (Doc. 62 at 6).

## II.  Standard of Review

In ruling on a motion to dismiss, this court must view the complaint in the light most favorable to the Plaintiff, and must limit its consideration to the pleadings and any exhibits attached thereto. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); Fed. R. Civ. P. 10(c).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir. 2003).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotations omitted).  "A complaint need not specify in detail the precise theory giving rise to the recovery.  All that is required is that the defendant be on notice as to the claim being

asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir. 1989).

## III. Legal Analysis

### A. Circles of Care, Inc.,[2]

In Count XII of the Second Amended Complaint (Doc. 62), Plaintiff asserts a cause of action under 42 U.S.C. § 1983 ("§1983") against Circles for violating Ashley's Fourteenth Amendment rights. The Plaintiff asserts that as a result of these constitutional deprivations, Ashley suffered physical injury, pain, suffering, and emotional distress which caused his death.

Circles asserts that the Plaintiff's claims against it should be dismissed because the Plaintiff has failed to meet the criteria required to plead a cause of action for prisoner suicide pursuant to §1983. (Doc. 70 at 3).

In order to succeed on a §1983 claim in a prisoner suicide case, "the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life." *Cook v. Sheriff of Monroe County, Fl.,* 402 F.3d 1092, 1115 (11th Cir. 2005) (internal citations omitted). In order to establish deliberate indifference, the plaintiff must show that the defendant: (1) had subjective knowledge of a risk of serious harm, and (2) disregarded that risk (3) by conduct that is more than mere negligence. *Id.* (internal citations omitted). The deliberate indifference standard requires that the defendant deliberately disregard "a strong likelihood," rather than a mere possibility, that the self-inflicted harm will occur. *Id.* (internal citations omitted). Circles can be

---

[2]Circles of Care alternatively makes a Motion to Strike several paragraphs from Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(f). Such Motions are generally disfavored, therefore this Motion will be denied. *See E. Wind Ass'n v. Indian Harbor Ins. Co.*, 2006 U.S. Dist. LEXIS 71999. *3 (M.D. Fla. October 3, 2006).

found liable under §1983  if Plaintiff establishes that Ashley's death was the result of:  (1) Circles' policies or customs *or* (2), Circles' final policymaker(s) acted with deliberate indifference to a constitutional deprivation, *or* (3) Circles' final policymaker(s) delegated authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) Circles' final policymakers ratified a constitutionally impermissible decision or recommendation of a subordinate employee. *Sherrod v. Palm Beach County School District*, 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

Plaintiff asserts that between December 5, 2003 and the time of Ashley's death, family members and friends called and went to BCDC in person to inform "Circles...and [its] agents and employees that Ashley was suicidal."  (Doc. 62 at 5).  This allegation is sufficient to satisfy the first prong of the deliberate indifference test.  Plaintiff also asserts that Circles, after receiving knowledge of Ashley's suicidal tendency, failed to provide adequate mental health care to Ashley. (Doc. 62 at 24).  Knowledge that Ashley was actually threatening to commit suicide is certainly enough to show knowledge of a substantial risk of suicide, rather than just a "mere possibility." These allegations satisfy the second prong of the deliberate indifference test.

Plaintiff satisfies the third prong of the deliberate indifference test by alleging that: (1) Circles had knowledge of Ashley's suicidal tendencies, and (2) Circles did not provide adequate health care or training to prevent Ashley's suicide.  In fact, Plaintiff alleges that on the evening of Ashley's death he was sleeping unattended on the day room floor and had access to a cell which provided him with the opportunity to harm himself.  (Doc. 62 at 6).  These allegations are sufficient to withstand a motion to dismiss.

Finally, Plaintiff has properly alleged that a policy or custom of Circles inflicted Ashley's injury. Plaintiff's allegation that Circles had a "policy or practice of failing to train [employees]...to identify, monitor, or otherwise treat inmates such as [Ashley] who are known suicide risks" satisfies the requirement that Plaintiff allege that a policy or custom of Circles inflicted Ashley's injuries.

Defendants argue that this Count should be dismissed because Plaintiff's First Amended Complaint alleges that Ashley was placed on suicide watch in response to his family's complaints and then released back into the general population after being examined by a psychiatrist, and that these facts show that Circles was not in fact deliberately indifferent to Ashley's risk of suicide. It is true that the Court is permitted to take judicial notice of the allegations made in Plaintiff's earlier Complaint, and need not accept internally inconsistent factual allegations. *See Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991); *Campos v. I.N.S.*, 32 F. Supp.2d 1337, 1343 (S.D. Fla. 1998). However, even accepting that Ashley was put on suicide watch for a few days and then seen by a psychiatrist, Plaintiff will still have a cause of action under § 1983 if Circles' failure to train its employees resulted in Ashley being improperly released back into general population. Furthermore, Plaintiff's Second Amended Complaint alleges that friends and family members were contacting BCDC about Ashley's risk of suicide through the time of his death, which supports the fact that Circles had subjective knowledge of Ashley's substantial risk for suicide throughout his stay at BCDC. Construing the allegations liberally in favor of the Plaintiff, as the Court must do at this stage, it is possible for the Plaintiff to maintain a § 1983 claim against Circles. Therefore, Count XII will not be dismissed.

B.  *Sheriff Parker*

1.  **§ 1983**

In Counts I and II, Plaintiff asserts a cause of action under §1983 against Sheriff Parker in his official capacity for violating Ashley's Fourteenth Amendment rights, alleging that Sheriff Parker failed to provide adequate staffing, to properly train staff and to provide safe housing for suicidal inmates.  Plaintiff alleges that Sheriff Parker: (1) was deliberately indifferent to the serious mental health needs of Ashley while he was incarcerated at BCDC; (2) had a policy, custom, or practice of providing unsafe, ultra hazardous housing to inmates despite known suicide risks; and (3) had a policy, custom, or practice of failure to provide safe housing for suicidal inmates.   The Plaintiff asserts that as a result of these failures, Ashley suffered injuries which caused his death.

In order to succeed on a municipal §1983 claim, a plaintiff must show: (1) the violation of one's constitutional rights; (2) a municipal policy or custom which constituted deliberate indifference to that right; and (3) the policy or custom which caused the violation.  *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th. Cir. 2004) (internal citations omitted).  Demonstration of a policy or custom generally requires a plaintiff to show a "persistent and wide spread practice."  *Id.* at 1290 (internal citations omitted).

The Complaint alleges that Ashley's Fourteenth Amendment rights were violated because, while he was a pre-trial detainee at BCDC, employees working there ignored his substantial risk of suicide, despite their subjective knowledge of the risk.  This is sufficient to meet the first prong of the municipal liability test.

Plaintiff then asserts the violation of Ashley's constitutional rights was a result of Sheriff Parker's failure to provide: (1) adequate staffing; (2) properly trained staff; and (3) safe housing

for suicidal inmates.  (Doc. 62 at 6-10).  The Complaint refers to several other inmate suicides that would have put Sheriff Parker on notice that there was a problem that needed to be addressed.  In light of Sheriff Parker's knowledge that inmate suicide was a problem, his failure to address any policies or customs that were causing those suicides would constitute deliberate indifference to the constitutional rights of inmates.  These allegations are sufficient to satisfy the second part of the municipal liability test.

Finally, where Plaintiff alleges that Ashley's death was a result of the policies and customs described, Plaintiff has set forth sufficient allegations to demonstrate that the policies or customs caused the violation. (Doc. 62 at 9, 11).

Sheriff Parker argues that the Plaintiff has not met the heightened pleading requirement that the Eleventh Circuit applies to claims arising under § 1983.  *See GJR Investments, Inc. v. County of Escambia, Fla,* 132 F.3d 1359, 1367 (11th Cir. 1998).  However, in GJR "the Court addressed the problem of shotgun pleading, in which the complaint presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional rights." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (internal quotations omitted).  That is simply not the case here.  Plaintiff has alleged that Ashley was an inmate at BCDC, that several individuals notified several members of BCDC staff that Ashley was threatening suicide, and that little or no action was taken to prevent Ashley's suicide.  The Complaint specifically alleges a violation of Ashley's Fourteenth Amendment rights.  There is no question that pre-trial detainees have a Fourteenth Amendment right to adequate medical care, including protection from known substantial risks of suicide.  The Complaint also points to several

other instances of suicide at BCDC and the possible policies and customs that have led to these

unfortunate events.  Plaintiff will have the opportunity during discovery to learn the specifics of

the practices and customs that go on inside BCDC, however these specifics need not be alleged in

the Complaint.  To require such specificity would mean that Plaintiffs would be required to know

the inter-workings of correctional facilities before they could bring a complaint.  As correctional

facilities are generally closed off from the public eye, this would be a difficult task at best.

Accordingly, the motions to dismiss Counts I and II will be denied.

### 2. Florida's Wrongful Death Act

In Count III, the Plaintiff asserts a cause of action for wrongful death under Florida Statute

§§ 768.16 *et. seq.* (the "Wrongful Death Act") against Sheriff Parker in his official capacity,

alleging that the wrongful acts of Sheriff Parker were the proximate cause of Ashley's death.

Sheriff Parker asserts that he is protected from this claim by sovereign immunity.

However, the Florida Supreme Court has adopted an operational/planning analysis to determine

the application of sovereign immunity. Under this analysis, "operational level decisions and

actions are not immune while decisions at the planning level remain immune." *White v. Palm*

*Beach County,* 404 So.2d 124 (Fla. 4th DCA 1981).  Here, Plaintiff alleges that Sheriff Parker

failed to (1) protect Ashley from his known desire to commit suicide, (2) house Ashley in a cell

free of known ultra hazardous conditions conducive to suicide are sufficient to plead a wrongful

death claim under the Florida Statute and (3) provide a jail that is not overcrowded..

The claim based on overcrowding is barred by *White*, which held that the decision to build

a new jail is a planning decision and therefore protected by sovereign immunity. *Id.* at 125.

However, the treatment of inmates and the maintenance of cells are operational decisions, for

which Sheriff Parker is not immune.  Therefore, although Plaintiff may not establish liability

simply by showing that BCDC was overcrowded, the motion to dismiss Count III will be denied.

 *C. Ellis and Zimmerman*

 In Count VII, the Plaintiff asserts a cause of action under §1983 against Zimmerman and

Ellis in their official capacities for violating Ashley's Fourteenth Amendment rights, alleging that

Zimmerman and Ellis were recklessly indifferent to Ashley's known suicide risk by  failing to

properly house, watch, monitor, detect, and otherwise prevent Ashley's suicide.  The Plaintiff

asserts that as a result of this conduct, Ashley suffered injuries which caused his death.

 Defendants contend that Count XII of the Amended Complaint (Doc 32 at 28-30), which

was dismissed with prejudice in an earlier Order (Doc. 54), was in substance the same claim as

Count VIII of the Second Amended Complaint (Doc. 62 at 26-27).  Defendants assert that both

counts are §1983 deliberate indifference claims against Ellis and Zimmerman in their individual

capacities.  (Doc. 63 at 3).  However, Count VIII of the Second Amended Complaint alleges that

Zimmerman and Ellis violated Ashley's Fourteenth Amendment rights in their "official capacity"

and, therefore, is not the same claim.  (Doc. 62 at 26). However, where a government official is

sued in his official capacity under § 1983, the proper party in interest is the officer's employer.

*Abusaid v. Hillsborough County Bd. of County Commissioners,* 405 F.3d 1298, 1302 n.3 (11th Cir.

2005).  Zimmerman and Ellis are employees of the Sheriff and the County, both of which are also

named in the Complaint.  Therefore, Count VIII will be dismissed as redundant.

 In Count IX, the Plaintiff asserts a cause of action for wrongful death under the Wrongful

Death Act against Zimmerman and Ellis in their official capacity alleging that the wrongful acts of

Zimmerman and Ellis were the proximate cause of Ashley's death.  The motion to dismiss Count

IX  is unopposed and, therefore, will be granted.

**IV. Conclusion**

       For the reasons stated herein, it is

       **ORDERED** that the Motion to Dismiss filed by Circles of Care, Inc. and Amy Diamond

(Doc. 64 ) is **DENIED** and the Motion to Dismiss filed by Sheriff Parker, Zimmerman and Ellis

(Doc. 63 ) is **GRANTED** in part and **DENIED** in part.  Counts VIII and IX of Plaintiff's Second

Amended Complaint are **DISMISSED.**

       **DONE** and **ORDERED** in Chambers, Orlando, Florida on October 31, 2006.

                                GREGORY A. PRESNELL
                       UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party